IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRIDE INTERNATIONAL, INC. and MEXICO DRILLING LIMITED, LLC, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-12-2889 |
| TESCO CORPORATION (US), TESCO CORPORATION, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, ILLINOIS NATIONAL INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, and ZURICH INSURANCE COMPANY, | § § § § § § § § § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Insurance Company of the State of Pennsylvania's and Illinois National Insurance Company's Motion for Summary Judgment (Document No. 12). After carefully considering the motion, response, reply, sur-reply, and applicable law, the Court concludes as follows.

I. Background

This case arises out of injuries sustained by Keith Taylor when working in proximity to a top-drive on a fixed oil platform in the Bay of Campeche off the coast of Mexico on January 1, 2009.[1] In this action, which has been severed from the underlying suit

---

[1] *See* Civil Action No. H-11-517.

brought by Keith Taylor and his wife, Plaintiffs Pride International, Inc. ("Pride") and Mexico Drilling Limited, LLC ("Mexico Drilling," collectively "Plaintiffs") sued Tesco Corporation (US) ("Tesco (US)"), Tesco Corporation ("Tesco"), Insurance Company of the State of Pennsylvania ("ISOP"), Illinois National Insurance Company ("INIC"), Steadfast Insurance Company, and Zurich Insurance Company, alleging duty to defend and indemnify and contribution claims.[2] This motion involves only the claims against ISOP and INIC.

Pride and Mexico Drilling contend that ISOP and INIC owe them a duty to defend and indemnify based on a 2008 Purchase Order ("Purchase Order"), and its incorporated Purchase Order General Terms and Conditions ("Terms and Conditions"), which are documents Pride apparently sent to Tesco in connection with Tesco's and/or its subsidiary's work in rebuilding the engine of the top drive unit that injured Keith Taylor. ISOP and INIC argue that "[n]either Tesco Corporation, Tesco Corporation (US), Mexico Drilling, nor Pride are parties to this Purchase Order as 'buyer' or 'seller'--terms defined in the Purchase Order and made the basis of the document's insurance requirements."[3] Therefore, ISOP and INIC contend that they are entitled to judgment as a matter of law.

---

[2] Document No. 17 (1st Am. Cmplt.).

[3] Document No. 12 at 2.

II. <u>Discussion</u>

A. <u>Legal Standard</u>

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. <u>Id.</u> "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." <u>Id.</u> "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." <u>Id.</u> 56(c)(3).

3

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

B. The Purchase Order and Terms and Conditions

It is undisputed that ISOP issued a foreign commercial general liability insurance policy, number 80-0268562, to Tesco, and INIC issued a commercial umbrella liability policy, number BE 53-721-28, to Tesco.[4] Both policies were effective from April 30, 2008 to

---

[4] Document No. 12, exs. 1 & 2.

4

October 30, 2009,[5] during the time period of Keith Taylor's accident.[6]  Both policies extend coverage also to "Additional Insureds," defined as persons to whom the named insured is obligated by a written contract to provide insurance such as that afforded by the policies.[7]

The multi-pages 2008 Purchase Order issued for the rebuilding of the engine of top drive unit 154, bears at the top of each page the name and logo of "PRIDE," evidencing that Pride prepared and issued the Purchase Order, and was in fact the purchaser to whom the product was to be delivered.  Pride designated that Mexico Drilling, Pride's subsidiary and the operator of the offshore well where the product was to be used, should be billed for the work.  This was set forth in the top "box" on the Purchase Order form, as follows:

```
Bill To    Mexico Drilling, Ltd
           Calle: 1 SUR, LOTE 2-A
           PTD IND. PESQ LAGUNA AZUL
           CP 24140
           CIUDAD DEL CARMEN, CAMPECHE
```

---

[5] Id.

[6] Document No. 13, ex. 5 at A-036.

[7] Document No. 12, ex. 1 at 29;  Id., ex. 2 at 54.

The supplier who was to perform the work for which Pride issued the Purchase Order was named in the "box" immediately underneath the identification of Mexico Drilling, Ltd., as follows:

```
Supplier    DRILLING INNOVATION DE MEXICO,S.A. DE CV
            DBA TESCO
            CALLE 33/A NO 24 COL FATIMA
```

The Purchase Order next names the party and address to which the product was to be delivered, namely, the issuer of the Purchaser Order, as follows:

```
Ship To    PRIDE 1002E
           AV. 4 ORIENTE NO 18-B ALTOS
           ENTRE-AV, 1 Y 2 SUR
           PTO. IND PESQ LAGUNA AZUL
           CIUDAD DEL CARMEN CM 24140
```

A subsidiary box on the Pride Purchase Order includes a number of details, even including the name of Pride's purchasing agent who was identified as "Buyer," as follows:

```
Buyer       CAMARENA AGUILAR, RAUL        Delivery Terms FOB Destinat, Frt PPD(UCC TX)
Promised Delivery    12/18/08             Supplier SO
Reference                                 Requisition No 00539389 OR
Frt Fwd Mode of Transport Land Freight    Order Summary   TESCO Rebuild Engine
Supplier Mode Of Transport                Delivery Instructions
```

No address is given for Mr. Camarena Aguilar, he is not the person to be billed, and he is not the person to whom the product is to be

6

shipped. The uncontroverted summary judgment evidence is that Mr. Camarena Aguilar was the purchaser's purchasing agent, or "buyer," employed by a subsidiary of Pride in Ciudad del Carmen.

All pages of the Purchase Order state that "Terms and Conditions Apply," and the parties are agreed that this refers to the Purchase Order's general terms and conditions issued by Pride and, once again, bearing the Pride name and logo at the top of each page. The Terms and Conditions employ the terms "Buyer" and "Seller," stating that those terms "as used herein shall mean the entities defined as such in the associated Purchase Order."[8] The Terms and Conditions generally impose constraints and obligations on the "Seller" for the benefit of the "Buyer," including requirements for Seller to provide certain liability insurance coverage for Buyer at Seller's cost, including waivers of subrogation in favor of Buyer, as follows:

> Seller agrees to carry, at its sole expense, Commercial General Liability Insurance, including Contractual Liability Insurance, Products Liability/Completed Operations Insurance, covering all operations and work hereunder in the amount of not less than $1,000,000 each occurrence/$2,000,000 aggregate combined single limit for bodily injury and property damage liability for all liability arising out of the injury to or death of one or more persons in any one occurrence, or destruction of property in any one occurrence. Such Insurance shall include Buyer Group as an additional insured with respect to all operations and work hereunder and such insurance shall provide that it applies separately to each insured against whom claim is made or suit is brought. Such Insurance shall contain a Waiver of Subrogation in favor

---

[8] Id., ex. 1B at A-019.

7

of Buyer Group and shall provide for 30 days prior written notice to Buyer or any cancellation or material change. Seller also agrees to carry, at its sole expense, Automobile Liability Insurance including hired and non-ownership liability insurance in the amount of not less than $1,000,000 combined single limit for bodily injury and property damage liability. Such insurance shall include Buyer Group as an additional insured, contain a Waiver of Subrogation in favor of Buyer Group and shall provide for 30 days prior written notice to Buyer of any cancellation or material change.

To the extent Seller or any of Seller's employees, affiliates or subcontractors are contemplated to enter Buyer's facilities or operations, Seller shall self-insure or carry statutory Worker's Compensation and Employer's Liability Insurance covering all operations and work hereunder in an amount not less than $1,000,000 per person. Such insurance shall contain a Waiver of Subrogation in favor of Buyer Group and shall provide for 30 days prior written notice to Buyer of any cancellation or material change. Seller agrees to maintain Umbrella Excess Liability Insurance in the amount of $10,000,000 each occurrence in excess of the Commercial General Liability, Automobile Liability & Employer's Liability. Such insurance shall include Buyer Group as an additional insured and contain a Waiver of Subrogation in favor of Buyer Group and shall provide for 30 days prior written notice of any cancellation or material change.

Seller shall promptly provide to Buyer Certificates of Insurance. The above insurance requirements are minimum requirements and shall not limit Seller's liability to Buyer or Buyer Group in any manner. All such insurance must be with insurance carriers with a minimum A.B. Best Rating of A VIII or better.[9]

The Terms and Conditions also contain a choice of law provision, stating that "ANY AND ALL DISPUTES ARISING HEREUNDER SHALL BE CONSTRUED ACCORDING TO THE LAWS OF ENGLAND THEN IN FORCE

---

[9] Id., ex. 1B at A-022-23. The Terms and Conditions define "Buyer Group" as "Buyer and its subsidiaries and their respective shareholders, employees, officers, directors, agents and representatives." Id., ex. 1B at A-022.

8

NOTWITHSTANDING ANY PRINCIPLES OF LAW THAT MAY REFER TO THE LAWS OF ANOTHER JURISDICTION."[10] Pursuant to the choice-of-law provision, Pride and Mexico Drilling contend that this Court must look to the laws of England to construe the Purchase Order and its Terms and Conditions in determining whether Tesco was contractually bound to provide insurance coverage to Pride and Mexico Drilling, such as to make them "Additional Insureds" under Tesco's INIC and ISOP policies. INIC and ISOP do not contest this reading of the choice-of-law provision. INIC and ISOP also do not argue in their motion that the Purchase Order and incorporated Terms and Conditions did not form a binding contract. Instead, they argue that the "Buyer" and "Buyer Group" covered as an additional insured is Pride's purchasing agent Mr. Camarena Aguilar, and not Pride, which issued the Purchase Order and to which Tesco delivered the rebuilt engine, or Mexico Drilling, which was billed for it. Pursuant to the Purchase Order's choice of law clause, the contract is interpreted in accordance with the laws of England. *See also*, FED. R. CIV. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").

---

[10] Id., ex. 1B at A-023.

C.  <u>Analysis</u>

ISOP and INIC argue that the contract should be interpreted without reference to extrinsic evidence because the contract is unambiguous. They contend that because Pride's purchasing agent wrote in his own name in the subsidiary "box" on the Purchase Order as "Buyer," he is the only individual or entity entitled to insurance coverage under the Terms and Conditions.[11] They also assert that the "Seller" is Drilling Innovation de Mexico, S.A. de CV,[12] and therefore appear to accept that "Supplier" is equivalent to "Seller."[13]

A contract is construed under English law from the perspective of "what a reasonable person having all the background knowledge which would have been available to the parties would have understood them to be using the language in the contract to mean." <u>Charbrook Ltd. v. Persimmon Homes Ltd</u>, [2009] UKHL 38, [2009] 1 A.C. 1101 (H.L.) 1112. Accordingly, extrinsic evidence is

---

[11] Document No. 12 at 8.

[12] <u>Id.</u> at 5.

[13] They assert that Tesco is not the "Seller" notwithstanding that the "Supplier" is listed as Drilling Innovation de Mexico, S.A. de CV *d/b/a Tesco*. The "Order Summary" in the subsidiary "box" on the Purchase Order also reads, "TESCO Rebuild Engine." The ISOP policy states that "Named Insured" also includes "any subsidiary, associated, affiliated, allied or acquired company or corporation (including subsidiaries thereof) of which any insured named as the Named Insured on the Declarations Page [Tesco] has more than 50% ownership interest in or exercises management or financial control over." Document No. 12, ex. 1 at 28.

10

permitted regardless of whether the contract is ambiguous or unambiguous. *See* Rainy Sky SA v. Kookmin Bank, [2011] UKSC 50, [2011] 1 W.L.R. 2900 (S.C.) 2908 ("I would accept the submission made on behalf of the appellants that the exercise of construction is essentially one unitary exercise in which the court must consider the language used and ascertain what a reasonable person, that is a person who has all the background knowledge which would have been available to the parties in the situation in which they were at the time of the contract, would have understood the parties to have meant. In doing so, the court must have regard to all the relevant circumstances."); Charbrook Ltd. v. Persimmon Homes Ltd, [2009] UKHL 38, [2009] 1 A.C. 1114 (H.L.) 1114 ("[I]n deciding whether there is a clear mistake, the court is not confined to reading the document without regard to its background or context. As the exercise is part of the single task of interpretation, the background and context must always be taken into consideration."); Prenn v. Simmonds, [1971] 1 W.L.R. 1381 (H.L.) 1383-84. ("The time has long passed when agreements, even those under seal, were isolated from the matrix of facts in which they were set and interpreted purely on internal linguistic considerations."); *see also* Pannell Kerr-Forster Int'l Ass'n Ltd. v. Quek, 5 F. App'x 574, 2001 WL 180646, at *2-3 (9th Cir. Feb. 2, 2001) (unpublished op.) (finding that district court erred in confining its analysis to the four corners of the contract because under English law, "evidence

of the surrounding circumstances is admissible in all cases to place the contract into its correct setting, even where there is no ambiguity apparent on the face of the document") (quoting KIM LEWISON, THE INTERPRETATION OF CONTRACTS § 2.10, at 44 (1989)).

Plaintiffs present the following evidence in response to the summary judgment motion: the declaration and deposition of Robert Estilette, Pride's rig manager who oversaw the exchange and overhaul of the top drive unit's engine; a Securities and Exchange Commission form identifying Innovation de Mexico, S.A. de CV as one of Tesco's subsidiaries; and a price quotation from Tesco regarding the engine rebuild.[14] ISOP and INIC move to strike these exhibits, arguing that extrinsic evidence is not admissible in interpreting an unambiguous contract.[15] The motion to strike is denied because Plaintiff's evidence constitutes the very kind of evidence that a court is required to consider when interpreting a contract in accordance with English law. See Prenn v. Simmonds, [1971] 1 W.L.R. 1381 (H.L.) 1385 ("[E]vidence should be restricted to evidence of the factual background known to the parties at or before the date of the contract, including evidence of the

---

[14] Document No. 13, exs. 1-4. Mr. Estilette's declaration and deposition both provide evidence that he understood that the refurbishment would be conducted by Tesco through its subsidiary Innovation de Mexico, S.A. de CV; that it was clear in his communications with Tesco that Pride was paying for the refurbishment through its subsidiary Mexico Drilling; and that Raul Camarena was acting as Pride's purchasing agent when he drafted the Purchase Order. Document No. 13, exs. 1 & 3.

[15] Document No. 14 at 1-2.

'genesis' and objectively the 'aim' of the transaction."). One cannot impartially examine the Purchase Order in the context of the relevant circumstances without recognizing that the parties to that agreement well knew that Pride issued the Purchase Order and was the purchaser of the product, that Tesco was the supplier/seller who would perform the work through its subsidiary, that Pride's subsidiary Mexico Drilling--the operator of the offshore well where the product was to be used--would be billed for the product, and that Mr. Camarena Aguilar was a purchasing agent--a "buyer" only in that sense--acting for Pride in issuing Pride's Purchase Order.

After having considered the substantial summary judgment evidence of the background for and the parties' obvious "aim" in forming their agreement pursuant to which Tesco would rebuild the engine for Pride and Mexico Drilling--however ineptly they may have used identifying terms for themselves in the Purchase Order and its Terms and Conditions--the Court finds that ISOP and INIC have not shown as a matter of law that Tesco was not obligated under the Purchase Order contract to procure additional insurance on Plaintiffs' behalf, and movants have not established as a matter of law that they have no duty to defend or to indemnify Plaintiffs against the *Taylor* claims.

III. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Insurance Company of the State of Pennsylvania's and Illinois National Insurance Company's Motion for Summary Judgment (Document No. 12) is DENIED.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 4TH day of June, 2013.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE